Nick Baltaxe (SBN 329751)
Meriel Kim (SBN 353628)
**DUANE MORRIS LLP**
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017
E-mail:  nbaltaxe@duanemorris.com
        mkim@duanemorris.com

Gerald L. Maatman, Jr. (IL 6181016)*
Jennifer A. Riley (IL 6272366)*
**DUANE MORRIS LLP**
190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
E-mail:  gmaatman@duanemorris.com
        jariley@duanemorris.com
* *pro hac vice* application forthcoming

Shireen Y. Wetmore (SBN 278501)
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
E-mail:  sywetmore@duanemorris.com

Attorneys for Defendants,
KELLY SERVICES GLOBAL, LLC, and
KELLY SERVICES, INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUISE LEWIS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KELLY SERVICES GLOBAL, LLC, a Michigan limited liability company; KELLY SERVICES, INC., a Delaware corporation; CANOO INC., a California corporation; CANOO SALES, LLC, a Delaware limited liability company; CANOO TECHNOLOGIES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DEFENDANTS KELLY SERVICES GLOBAL LLC AND KELLY SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL CLASS ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>[Removed from Los Angeles Superior Court, Case No. 24STCV16782]<br><br>*[Filed concurrently with Declaration of Terri Ministrelli, Corporate Disclosure Statement, Request for Judicial Notice; Civil Case Cover Sheet; and Notice of Interested Parties]* |

DM2\19940825.2

NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants KELLY SERVICES GLOBAL, LLC and KELLY SERVICES, INC. hereby remove the above-captioned case from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California, asserting original jurisdiction under 28 U.S.C. §§ 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), and removal jurisdiction under 28 U.S.C. §§ 1441(a), 1446, and 1453.

## I.   BACKGROUND

1. On July 8, 2024, Plaintiff Marquise Lewis ("Plaintiff") filed a Class Action Complaint (the "Complaint") in the Superior Court of the State of California, County of Los Angeles (the "Superior Court"), entitled *Marquise Lewis v. Kelly Services Global, LLC, et al.,* Case Number 24STCV16782. Plaintiff purports to assert causes of action against Kelly Services Global, LLC ("KSG") and Kelly Services, Inc. ("KSI") (collectively "Kelly" or "Defendants") for alleged wage and hour violations. (Declaration of Terri Ministrelli in Support of Kelly's Notice of Removal ("Ministrelli Decl.") ¶ 7, Ex. A, Plaintiff's Class Action Complaint.)

2. Plaintiff bases his claims on alleged violations of the California Labor Code. Specifically, Plaintiff claims that Kelly violated the Labor Code by: (1) failure to provide meal periods; (2) failure to authorize and permit rest periods; (3) failure to pay minimum wages; (4) failure to pay overtime wages; (5) failure to pay all wages due to discharged and quitting employees; (6) failure to maintain required records; (7) failure to furnish accurate itemized wage statements; (8) failure to indemnify employees for necessary expenditures incurred in discharge of duties; and (9) unfair and unlawful business practices; and Plaintiff seeks to pursue a representative action for penalties under the Labor Code Private Attorneys General Act (*Id.* ¶¶ 17-64.)

3. In the Complaint, Plaintiff seeks to represent a putative class (the "Class") consisting of "[a]ll current and former non-exempt employees of DEFENDANTS in the State[] of California at any time within the period beginning four (4) years prior to the filing of this action and ending at the time this action settles or proceeds to final judgment." (*Id.* ¶ 5.) The class period, pursuant to Plaintiff's definition of the putative class, would extend from July 8, 2020, to present.

4. On July 10, 2024, Defendants were served and received a copy of the service packet, including the Class Action Complaint, Summons, Alternative Dispute Resolution (ADR) Package, and other documents. (Ministrelli Decl. ¶ 7.) A true and correct copy of the contents of this service package are attached as **Exhibit A** to the Declaration of Terri Ministrelli in Support of Kelly's Notice of Removal.

## II. TIMELINESS OF REMOVAL

5. Under 28 U.S.C. §§ 1446(b), a defendant may remove a civil action: (1) within 30 days after the receipt . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based"; or (2) "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446(b)(1), (b)(3); *see Thompson v. Target Corp.*, No. 16-CV-00839, 2016 WL 4119937, at *3 (C.D. Cal. Aug. 2, 2016).

6. This Notice of Removal is timely filed because it is filed within 30 days of the service of the initial pleading.

## III. CLASS ACTION FAIRNESS REMOVAL

7. This Court has original subject-matter jurisdiction over this action under CAFA, codified in relevant part at 28 U.S.C. § 1332(d)(2), because: (1) the action involves 100 or more putative class members; (2) at least one putative class member is a citizen of a state different from that of at least one defendant; and (3) the amount in

controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. §§ 1332(d)(2), (d)(5), & (d)(6).

8. Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (holding a notice of removal "need not contain evidentiary submissions").  Rather, "[a] defendant's notice of removal needs to include only a plausible allegation that the jurisdictional facts exist." *Id.* at 89.  Evidence is required "only when plaintiff contests, or the court questions the defendant's allegation." *Id.*

9. The United States Supreme Court in *Dart Cherokee* held that "no anti-removal presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.*  Following *Dart Cherokee*, the Ninth Circuit has directed district courts to "interpret CAFA's provisions under section 1332 broadly in favor of removal." *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1184 (9th Cir. 2015); *see Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) (holding that courts may not remand where notice of removal plausibly alleges the basis for removal).

### A. The Putative Class Exceeds 100

10. The number of putative class members in this action is greater than 100.  28 U.S.C. § 1332(d)(5)(B).  Indeed, the number of hourly non-exempt employees employed by each Defendant in the State of California totals approximately 38,307 employees during the relevant time period.  (*See* Ministrelli Decl. ¶ 10.)

### B. Plaintiff And Defendants Are Minimally Diverse

11. CAFA requires only minimal diversity for purposes of establishing federal jurisdiction.  That is, at least one putative class member must be a citizen of a state different from any named defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).  In this

case, Plaintiff is a citizen of a state (California) that is different from the state of citizenship of KSG (Michigan) and KSI (Delaware and Michigan).

### 1. Plaintiff Is A Citizen Of California

12. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place where he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). Citizenship is determined by the individual's domicile at the time the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)); *see Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (holding that, where complaint alleges plaintiff resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").

13. Plaintiff alleges that he is a citizen of California. (Ex. A., Compl. ¶ 4.) In addition, based on Company records, Plaintiff was a resident of California throughout the period of his employment with KSG. (Ministrelli Decl. ¶ 8.) KSG's records reflect that Plaintiff resided in either Inglewood or San Pedro, California while he was employed by KSG. (*Id.*) Accordingly, on information and belief following a reasonable investigation, Plaintiff is a citizen of California.

### 2. Defendants Kelly Services Global, LLC And Kelly Services, Inc. Are Not Citizens Of California

14. Plaintiff names Kelly Services Global, LLC and Kelly Services, Inc. as defendants. As a general rule, a limited liability company is a citizen of every state of which its members are citizens. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("LLCs resemble both partnerships and corporations. Notwithstanding LLCs' corporate traits, however, every circuit that has

addressed the question treats them like partnerships for the purposes of diversity jurisdiction. . . . [A]n LLC is a citizen of every state of which its owners/members are citizens.").

15. For purposes of CAFA's minimal diversity requirement, however, an "unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes.").

16. A corporation's principal place of business for diversity purposes is normally "the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010). In *Hertz*, the U.S. Supreme Court held that the "principal place of business" of a corporation is best interpreted as a corporation's "nerve center," which "ordinarily equates . . . with a corporation's headquarters." *Id.* The Court explained that "in practice [the nerve center] should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 1192-93; *see id.* at 1195 (distinguishing situation where alleged "nerve center" is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat").

17. For removal purposes, citizenship is measured both when the action is filed and when it is removed. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter*, 265 F.3d at 857.

18. At all times since Plaintiff commenced this lawsuit, Kelly Services Global, LLC has been a limited liability company formed under the laws of the State

of Michigan with its principal place of business in the State of Michigan. (Ministrelli Decl. ¶¶ 3-4.) Kelly Services Global, LLC has maintained its corporate headquarters in Troy, Michigan. (*Id.* ¶ 4.) Its corporate executives, including its senior leadership team, have been and continue to be located in Michigan, have maintained and continue to maintain their offices in Michigan, and have performed and continue to perform their primary duties and job functions in Michigan. (*Id.*) Because Kelly Services Global, LLC was formed under the laws of the State of Michigan and maintains its principal place of business in the State of Michigan, it is not a citizen of the State of California.

19. At all times since Plaintiff commenced this lawsuit, Kelly Services, Inc. has been incorporated under the laws of the State of Delaware with its principal place of business in the State of Michigan. (Ministrelli Decl. ¶¶ 5-6.) Kelly Services, Inc. has maintained its corporate headquarters in Troy, Michigan. (*Id.* ¶ 6.) Its corporate executives, including its senior leadership team, have been and continue to be located in Michigan, have maintained and continue to maintain their offices in Michigan, and have performed and continue to perform their primary duties and job functions in Michigan. (*Id.*) Because Kelly Services, Inc. was formed under the laws of the State of Delaware and maintains its principal place of business in the State of Michigan, it is not a citizen of the State of California.

20. Accordingly, CAFA's diversity requirement is satisfied because at least one class member – here, Plaintiff – and Defendants Kelly Services Global, LLC and Kelly Services, Inc. are citizens of different states.

**3.  Doe Defendants Have No Bearing On Diversity Jurisdiction**

21. Pursuant to 28 U.S.C. §§ 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *See, e.g.*, *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (holding that unnamed defendants are not required to join in a removal petition); *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir.

2002) ("[C]itizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant."). Thus, the existence of Doe Defendants 1 through 100 does not deprive this Court of jurisdiction. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679-80 n.4 (9th Cir. 2006).

### 4. Not All Defendants Need To Consent To Removal

22. Consent of Kelly's co-defendants Canoo, Inc., Canoo Sales, LLC, and Canoo Technologies, Inc., is not required under 28 U.S.C. § 1332(d). *See* 28 U.S.C. §1453(b).

### C. The Amount In Controversy Exceeds The Statutory Minimum

23. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case. . . . Overall, [the] new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

24. To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must make only a plausible claim that the amount in controversy exceeds that amount. *Dart Cherokee Basin Operating Co., LLC v.*

*Owens*, 135 S. Ct. 547 (2014).  Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only "plausibly show that it is reasonably possible that the potential liability exceed $5 million." *Greene v. Harley-Davidson*, 965 F.3d 767, 772 (9th Cir. 2020).  A defendant can establish the amount in controversy by "providing only a short and plain statement of the grounds for removal." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019).

25. As the Ninth Circuit has explained, "the amount in controversy is the 'amount at stake in the underlying litigation,'" which "does not mean likely or probable liability; rather, it refers to possible liability." *Id.* (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (emphasis omitted)).  "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy the Court looks to what the plaintiff has alleged, not what the defendants will owe."), *aff'd,* 631 F.3d 1010 (9th Cir. 2011).

26. While Kelly denies any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs.  Kelly bases all calculations supporting the amount in controversy on the Complaint's allegations (along with other documents identified herein) assuming, without any admission, the truth of the allegations (which Kelly disputes).  Likewise, Kelly bases these calculations on the putative class alleged in the Complaint and in no way indicates or concedes that class treatment is appropriate in this case, that Plaintiff has standing to represent any class, or that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  Kelly expressly reserves the right to challenge Plaintiff's claims, adequacy, and standing to represent any class, Plaintiff's class definition, Plaintiff's ability to meet the

requirements of Rule 23, and the calculation of damages or any other monetary relief in all respects.

27. Because Plaintiff has not alleged a particular dollar figure regarding the relief sought, reasonable estimates of the alleged amount in controversy are appropriate. *See Ibarra v. Manheim Inv.'s, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). Moreover, where a plaintiff alleges a "uniform policy and systematic scheme of wage abuse," without including "any modifying language to suggest less than uniform violations," courts have found that the amount in controversy can be satisfied by assuming a 100% violation rate. *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. 2017) (distinguishing *Ibarra*); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *2-3 (C.D. Cal. 2015) ("Removing defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation.").

28. As the U.S. Supreme Court has explained, a defendant's amount-in-controversy allegations on removal are entitled to the same weight given those alleged by a plaintiff in its pleadings. *Dart Cherokee Basin Operating Co.*, 574 U.S. at 88. As a result, the effect of any affirmative defenses potentially reducing the amount in controversy cannot be considered when determining federal jurisdiction. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010); *Scherer v. Equitable Life Assur. Soc.*, 347 F.3d 394, 397-398 (2d Cir. 2003) (holding that affirmative defenses may not be used to "whittle down the amount in controversy"); *Lara v. Trimac Transp. Servs. (Western), Inc.*, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010) ("[A]ffirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum.").

29. Plaintiff seeks the following monetary damages on behalf of the putative class: (1) premiums as a result of Kelly's alleged failure to pay meal periods (Ex. A.,

Compl. ¶ 21); (2) premiums as a result of Kelly's alleged failure to provide rest periods (*id.* ¶ 25); (3) unpaid wages as a result of Kelly's alleged failure to pay minimum wages (*id.* ¶ 29); (4) overtime wages due to Kelly's alleged failure to pay overtime (*id.* ¶ 34); (5) expenses penalties as a result of Kelly's alleged failure to pay wages due to discharged and quitting employees (*id.* ¶ 42); (6) penalties as a result of Kelly's alleged failure to furnish accurate itemized wage statements (*id.* ¶ 46); (7) penalties as a result of Kelly's alleged failure to maintain required records (*id.* ¶ 49); (8) expenses as a result of Kelly's alleged failure to provide reimbursement for necessary business (*id.* ¶ 53); (9) penalties as a result of Unfair Competition claims (*id.* ¶ 59); and (10) penalties under Private Attorneys' General Act (*id.* ¶ 62).

### 1. Unpaid Meal Premiums Claim

30. Plaintiff alleges that Kelly had purported "policies and practices" of failing to provide employees with meal periods and that Defendants "had, and continue to have, a policy and practice of failing to provide [Plaintiff] and [Class Members] full and timely meal periods." (*Id.* ¶ 13; *see id.* ¶ 18 (alleging that Kelly *regularly* failed to provide Plaintiff and the Class with both meal periods as required by California law).) As such, Plaintiff alleges that he and other class members "regularly have been, and continue to be, denied the opportunity to take full, uninterrupted, and timely meal periods." (*Id.* ¶ 19.)

31. Based on these alleged violations of the Labor Code, Plaintiff seeks premium wages for the allegedly missed meal breaks. (*Id.*, Prayer for Relief.)

32. California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." *Cal. Lab. Code* § 512. Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes." California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full

or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, at *4 (N.D. Cal. Apr. 29, 2010) (noting California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

33. While the statute of limitations for recovery for meal period premium pay under California Labor Code § 226.7 is three years, *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."), the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL. *See Falk v. Children's Hospital Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) ("[A]ctions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation."). Accordingly, the proposed class period for the unpaid meal period premium claim is from **July 8, 2020, to present**.

34. As noted above, from July 8, 2020, to July 28, 2024, the putative class members worked a total of approximately 733,577 workweeks – *i.e.*, approximately 733,577 pay periods. (Ministrelli Decl. ¶ 10.)

35. Assuming a violation rate of one uncompensated, non-complaint meal period every three workweeks, the amount in controversy on this claim would equal at least approximately **$5,787,864.65** [$23.67/hour (one hour of premium pay at the alleged class average rate of pay) x 244,523.22 weeks (one third of the total workweeks) = **$5,787,864.65**]. If one assumes a purported violation rate of one uncompensated, non-compliant meal period every workweek, the amount in controversy on this claim is over **$17,000,000.** [$23.67/hour (one hour of premium pay at the alleged class average rate of pay) x 733,577 weeks (number of workweeks) = **$17,363.767.60**]

36. Kelly's estimate is conservative. Kelly assumes only one meal period violation over a three-week period, which is arguably less frequent than Plaintiff suggests with his allegations that Kelly had a "policy and practice" of failing to authorize and permit meal breaks or to pay the requisite premiums in lieu of providing such breaks. (*See* Ex. A., Compl. ¶ 13.)

37. Based on Plaintiff's allegations of meal period issues, an estimated violation rate of one unpaid meal period premium every three weeks per class member is reasonable. *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018 (concluding a 60% violation rate for meal periods and a 30% violation rate for rest periods is reasonable); *Ramirez v. HV Global Mgmt. Corp.*, 2022 WL 1210402, at *6 (N.D. Cal. Apr. 25, 2022) (concluding a 25% violation rate in a meal period violation claim reasonable and observing that courts in the Northern District have found violation rates of 25% to 60% reasonable); *Sanchez v. Abbott Labs.*, 2021 WL 2676057, at 4-5 (E.D. Cal. June 30, 2021) (holding that a 60 percent violation rate for meal period violations is reasonable when plaintiff alleged a "pattern and practice" of meal period violations). Kelly's assumption of one violation in every three workweeks – or one in 15 workdays (assuming a 5 day-a-week workweek) – represents an assumed violation rate of less than 7% on a claim of supposed "systemic" violations by the employer. At just one unpaid meal premium every three weeks, this claim alone supports removal under CAFA.

### 2. Unpaid Rest Premiums Claim

38. Plaintiff alleges that Kelly had a purported "policy and practice" of failing to provide employees with rest periods and that Kelly "had, and continue to have, a policy and practice of failing to authorize and permit [Plaintiff] and [Class Members] to take rest breaks." (*See* Compl. ¶ 13; *see also id.* ¶ 23.) As such, Plaintiff alleges that he and other class members "regularly have been, and continue to be, denied the opportunity to take full, uninterrupted, and timely rest periods." (*Id.*)

39. Based on these alleged violations of the Labor Code, Plaintiff seeks premium wages for the allegedly missed rest breaks. (*Id.*, Prayer for Relief.)

40. California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." *Cal. Lab. Code* § 512. Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes." California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, at *4 (N.D. Cal. Apr. 29, 2010) (noting California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

41. While the statute of limitations for recovery for rest period premium pay under California Labor Code § 226.7 is three years, *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."), the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL. *See Falk v. Children's Hospital Los Angeles*, 237 Cal. App. 4th 1454, 1462 n.12 (2015) ("[A]ctions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation."). Accordingly, the proposed class period for the unpaid meal period premium claim is from **July 8, 2020, to present**.

42. As noted above, from July 8, 2020, to July 28, 2024, the putative class members worked a total of approximately 733,577 workweeks – *i.e.*, approximately 733,577 pay periods. (Ministrelli Decl. ¶ 10.)

1   43.   Assuming a violation rate of one uncompensated, non-complaint rest period every three workweeks, the amount in controversy on this claim would equal at least approximately **$5,787,864.65** [$23.67/hour (one hour of premium pay at the alleged class average rate of pay) x 244,523.22 weeks (one third of the total workweeks) = **$5,787,864.65**]. If one assumes a violation rate of one uncompensated, non-compliant rest period every workweek, the amount in controversy on this claim is over **$17,000,000.** [$23.67/hour (one hour of premium pay at the alleged class average rate of pay) x 733,577 weeks (number of workweeks) = **$17,363.767.60**]

44.   Kelly's estimate is conservative. Kelly assumes only one alleged rest period violation over a three-week period, which is arguably less frequent than Plaintiff suggests with his allegations that Kelly had a supposed "policy and practice" of failing authorize and permit rest breaks or to pay the requisite premiums in lieu of providing such breaks. (*See* Compl. ¶ 13.)

45.   Based on Plaintiff's allegations of rest period issues, an estimated violation rate of one unpaid rest period premium every three weeks per class member is reasonable. *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147. 1151 (S.D. Cal. 2018 (concluding a 60% violation rate for meal periods and a 30% violation rate for rest periods is reasonable). Kelly's assumption of one violation in every three workweeks — or one in 15 workdays (assuming a 5 day-a-week workweek) — represents an assumed violation rate of less than 7% on a claim of alleged "systemic" violations by the employer.

### 3.   Approximate Aggregate Amount In Controversy

46.   Although Kelly denies Plaintiff's allegations that he or any non-exempt California employee or member of the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for the asserted claims, exclusive of attorneys' fees, interest, or costs, is between approximately **$11,575,729.30** to **$34,727,535.20** calculated as follows:

| Unpaid Meal Period Premiums Claim | $5,787,864.65 -- $17,363.767.60 |
|---|---|
| Unpaid Rest Period Premium Claims | $5,787,864.65 -- $17,363.767.60 |
| **Total** | **$11,575,729.30 – $34,727,535.20** |

47. The figures above do not take into account damages or penalties associated with claims for unpaid minimum or overtime wages, waiting time penalties, wage statement violations, failure to reimburse business expenses, or attorneys' fees. Taking into account a *reasonable* assumption for any of these claims would contribute to the minimum amount in controversy. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).

48. As set forth above, the amount Plaintiff has placed in controversy easily satisfies CAFA's $5,000,000 requirement. Indeed, using a conservative estimate for two of the claims asserted by Plaintiff, the total amount in controversy is at least between **$11,575,729.30** to **$34,727,535.20.**

## IV.  VENUE

49. Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(d). This action originally was brought in the Los Angeles County Superior Court of the State of California, which is located within the Central District of California. 28 U.S.C. § 84(d). Therefore, it is properly removed to this District.

## V.  NOTICE OF REMOVAL TO STATE COURT AND TO PLAINTIFF

50. This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Los Angeles County Superior Court of the State of California, as required under 28 U.S.C. § 1446(d).

## VI. PRAYER FOR REMOVAL

**WHEREFORE,** Defendants Kelly Services Global, LLC and Kelly Services, Inc. pray that this civil action be removed from the Los Angeles County Superior Court of the State of California to the United States District Court for the Central District of California.

Dated: August 9, 2024     DUANE MORRIS LLP

By  /s Nick Baltaxe
Gerald L. Maatman, Jr.
Jennifer A. Riley
Shireen Y. Wetmore
Nick Baltaxe
Meriel Kim

Attorneys for Defendants,
KELLY SERVICES GLOBAL, LLC and
KELLY SERVICES, INC.